**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| YOCHUNN R. JOHNSON, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-CV-0254-N-BK |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social | § | |
| Security Administration, | § | |
|     Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3*, this case has been referred to the undersigned for Findings, Conclusions, and Recommendation. The Court now considers the parties' cross motions for summary judgment. For the reasons that follow, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 20, be **DENIED**, Defendant's motion for summary judgment, Doc. 21, be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.[1]

## I. BACKGROUND

### A. Procedural History

Plaintiff seeks judicial review of a final decision by the Commissioner denying his claim for disability insurance benefits under the Social Security Act. Doc. 20 at 1-4. Plaintiff filed applications for disability insurance benefits and supplemental security income in February 2012, alleging disability beginning January 2011. Doc. 17-7 at 6. His application was denied at all

---

[1] Pursuant to Local Rule 9.1(b), each party was ordered to file a motion for summary judgment with supporting brief. Doc. 18. Although Defendant's pleading is titled only "Commissioner's Brief," in the concluding paragraph, Defendant prays that "the Court grant this Motion for Summary Judgment and affirm the Commissioner's decision." Doc. 21. Accordingly, the Court construes the pleading as Defendant's motion for summary judgment.

administrative levels, and he now appeals to this Court, without the assistance of legal counsel, pursuant to 42 U.S.C. § 405(g). Doc. 17-5 at 2, 12; Doc. 17-3 at 2, 6.

### B. Facts

Plaintiff was 40 years old on the alleged disability onset date and has a high school education. Doc. 17-3 at 15. Plaintiff testified that he has been unable to work due to heart problems and symptoms that include shortness of breath. Doc. 17-3 at 26. Plaintiff also claimed significantly impaired sleep. Doc. 17-3 at 26. Plaintiff has primary custody of his two minor sons and has lived with his mother since 2010. Doc. 17-3 at 24, 41.

In December 2011, Plaintiff visited the emergency room after falling. Doc. 17-8 at 20. Plaintiff complained of chest discomfort but denied shortness of breath. Doc. 17-8 at 20. He also reported noncompliance with hypertension medications. Doc. 17-8 at 20. The attending physician noted elevated blood pressure, regular cardiovascular rate and rhythm, and no respiratory distress. Doc. 17-8 at 21. The attending physician prescribed medications for Plaintiff's pain and blood pressure. Doc. 17-8 at 21.

In January 2012, Plaintiff visited the emergency room complaining of chest pain for three days attributable to pneumothorax (collapsed lung). Doc. 17-8 at 3. At discharge, Plaintiff's condition was stabilized after medical care at the hospital for four days. Doc. 17-8 at 5-19. Plaintiff was instructed to return if any respiratory distress or pain returned. Doc. 17-8 at 3.

In April 2012, Kelley Davis, D.O., performed a Commissioner-sponsored consultative evaluation pursuant to Plaintiff's application for disability benefits. Doc. 17-8 at 46-50. During the evaluation, Plaintiff complained of chest pain. Doc. 17-8 at 46. Dr. Davis found no abnormalities in respiratory, cardiovascular, musculoskeletal, and psychological function. Doc.

17-8 at 47. Clinical studies revealed ischemia and abnormal sinus rhythm, and Dr. Davis advised that Plaintiff seek care. Doc. 17-8 at 48.

In July 2012, Plaintiff visited the emergency room after experiencing chest pain. Doc. 17-10 at 10. Plaintiff reported noncompliance with medications due to cost. Doc. 17-10 at 10. Plaintiff's physical exam revealed a regular cardiovascular rhythm and normal breathing. Doc. 17-10 at 15. Plaintiff's chest pain resolved after receiving medications. Doc. 17-10 at 17. Plaintiff also met with a financial counselor to discuss reduced-cost medications. Doc. 17-10 at 17.

In August 2012, Plaintiff was referred to the emergency room from cardiac rehabilitation for hypertension. Doc. 17-10 at 28. Plaintiff stated that he had been in a "good state of health," and denied shortness of breath, chest pain, or decreased exercise tolerance. Doc. 17-10 at 28. The attending physician increased the dosage of Plaintiff's medication, and Plaintiff left the hospital in no distress. Doc. 17-10 at 31.

In August 2013, Plaintiff visited the emergency room complaining of chest pain and shortness of breath. Doc. 17-10 at 35. Plaintiff reported noncompliance with medications. Doc. 17-10 at 35. Plaintiff's condition resolved after he received medications and he was discharged in a stable condition. Doc. 17-10 at 45.

### C. ALJ's Findings

In a decision dated February 5, 2014, the ALJ found Plaintiff not disabled and denied his claims for benefits. Doc. 17-3 at 6-17. The ALJ analyzed Plaintiff's claims pursuant to the five-step sequential evaluation process applicable to adult Social Security disability claims. Doc. 17-3 at 11-17. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. Doc. 17-3 at 11. At step two, the ALJ found the following

impairments to be medically severe: ischemic heart disease with reocclusion of stents, hypertension, and history of pneumothorax.  Doc. 17-3 at 11.  At step three, the ALJ concluded that Plaintiff's severe impairments did not meet or equal the requirements for presumptive disability under the listed impairments in the regulations.  Doc. 17-3 at 11-12.

Next, the ALJ found that Plaintiff's subjective complaints were not credible to the extent alleged.  Doc. 17-3 at 13.  The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work with the following limitations: Plaintiff could lift and carry 20 pounds occasionally and ten pounds frequently; could stand or walk for six hours in an eight-hour workday and sit for six hours throughout the workday; could occasionally climb; could frequently kneel, crouch, crawl, and stoop; must avoid all exposure to heat, and concentrated exposure to hazardous moving machinery and unprotected heights.  Doc. 17-3 at 12.

At step four, the ALJ determined that Plaintiff could return to his past relevant work as a mail processor.  Doc. 17-3 at 15.  Thus, the ALJ found Plaintiff not disabled at step four.  Doc. 17-3 at 16.  In the alternative, at step five, the ALJ relied upon vocational expert testimony to find Plaintiff capable of performing work that exists in significant numbers in the national economy.  Doc. 17-3 at 15.  Specifically, the ALJ found that Plaintiff could perform jobs such as cashier II (183,100 jobs nationally; 15,000 jobs locally), sales attendant (89,000 jobs nationally; 7,200 jobs locally), and general office clerk/order caller (226,500 jobs nationally; 16,400 jobs locally).  Doc. 17-3 at 15.  Consequently, the ALJ alternatively found Plaintiff not disabled at step five.  Doc. 17-3 at 15.  The Appeals Council denied Plaintiff's request for review on November 21, 2014, leaving the ALJ's decision to stand as the Commissioner's final decision in this matter.  Doc. 17-3 at 2-4.

## II.    APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991)(summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).  Under the first four steps of the analysis, the burden of proof lies with the claimant.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### III.   ARGUMENT AND ANALYSIS

Liberally construing Plaintiff's brief, he generally argues that the Commissioner's decision is not supported by substantial evidence. Doc. 20 at 1-4. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (providing that the courts should liberally construe *pro se* pleadings). Plaintiff also has appended to his brief additional medical records. Doc. 20 at 10. The records reflect, *inter alia*, that Plaintiff was diagnosed with shortness of breath, hypertension, and coronary artery disease in May 2015 and was prescribed an inhaler.

Defendant replies that the ALJ scrupulously reviewed the medical record and properly found Plaintiff not disabled. Doc. 21 at 4. Defendant further asserts that Plaintiff's new medical evidence is not material because it post-dates the ALJ's decision and does not relate to the time period for which disability benefits were denied. Doc. 21 at 7. *Leggett*, 67 F.3d at 566-67 (holding that evidence post-dating the ALJ's decision was not probative for the claimant's condition during the relevant period).

Upon consideration of the law, the record, and the parties' arguments, the Court concludes that the ALJ's decision finding Plaintiff not disabled is supported by substantial

evidence. The ALJ performed a thorough analysis of Plaintiff's condition based on the objective medical evidence, which indicated that while Plaintiff's impairments are not disabling. Regarding Plaintiff's collapsed lung, the ALJ considered hospital records from January 2012 indicating that Plaintiff visited the emergency room complaining of chest pain attributable to pneumothorax. Doc. 17-8 at 3. Plaintiff's condition stabilized with medical care at the hospital for four days, and the record shows no further treatment for this condition. Doc. 17-8 at 5-19.

Regarding Plaintiff's cardiovascular issues, the ALJ considered hospital records in December 2011, July 2012, and August 2013. During all incidents, Plaintiff visited the emergency room complaining of chest discomfort or chest pain. Doc. 17-8 at 20; Doc. 17-10 at 13, 35. At his 2011 ER visit, Plaintiff denied shortness of breath but reported shortness of breath during the 2012 and 2013 visits. Doc. 17-8 at 20; Doc. 17-10 at 13, 35. During all three visits Plaintiff reported noncompliance with medications. Doc. 17-8 at 20; Doc. 17-10 at 13, 35. Additionally, at all three visits, Plaintiff's condition stabilized after receiving medication. Doc. 17-8 at 20; Doc. 17-10 at 13, 35. During the 2012 visit, Plaintiff met with a financial counselor to discuss the importance of his medication and to seek reduced-cost medications. Doc. 17-10 at 17. Plaintiff alleges financial constraints as the reason for his inability to purchase the necessary medication, however, this is inconsistent with his reported consumption of cigarettes every few days, four to five beers a week, and marijuana on occasion. Doc. 20 at 2; Doc. 17-10 at 90.

In April 2012, Kelley Davis, D.O., performed a Commissioner-sponsored consultative evaluation pursuant to Plaintiff's application for disability benefits. Doc. 17-8 at 46-50. Despite Plaintiff's alleged chest pain, Dr. Davis found no abnormalities in respiratory, cardiovascular, musculoskeletal, and psychological function. Doc. 17-8 at 47. Clinical studies revealed

ischemia and abnormal sinus rhythm, and Dr. Davis advised that Plaintiff seek care. Doc. 17-8 at 48. The record next reveals that, in August 2012, Plaintiff was referred to the emergency room from cardiac rehabilitation due to his hypertension. Doc. 17-10 at 28. Plaintiff stated that he had been in a "good state of health," and denied shortness of breath, chest pain, or decreased exercise tolerance. Doc. 17-10 at 28. Plaintiff's left the hospital in no distress and the attending physician increased the dosage of Plaintiff's medication. Doc. 17-10 at 31. On this record, the ALJ properly determined that Plaintiff's medical problems resolved after he received treatment. Doc. 17-3 at 13. To be disabling, symptoms must be constant, unremitting, and wholly unresponsive to therapeutic treatment. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th. Cir. 2001).

Finally, the documents Plaintiff attached to his brief are of no moment. The documents post-date the ALJ's decision and concern a previously non-disabling condition that has allegedly worsened, Doc. 20 at 1, and do not  This is insufficient to justify remand. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) (stating that a case will be remanded for consideration of new evidence if it relates to the time period for which benefits were denied and does not concern either a later-acquired disability or the subsequent deterioration of a previously non-disabling condition).

Thus, the Court concludes that there was sufficient evidence from which to conclude that Plaintiff was not disabled under the Act. Accordingly, the ALJ's decision was supported by substantial evidence.

## IV. CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 20, be **DENIED**, Defendant's motion for summary judgment, Doc. 21, be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

**SO RECOMMENDED**, October 1, 2015.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

9